IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:20-CV-00112-RN

| | |
|---|---|
| **Brooke Murphy Ford,** | |
| Plaintiff, | |
| v. | **Memorandum & Order** |
| **Kilolo Kijakazi,[1]**<br>Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Brooke Ford challenges Administrative Law Judge ("ALJ") Vincent Hill's denial of her application for social security income. Ford claims that ALJ Hill erred in (1) considering the medical opinion evidence, (2) determining the severity of her somatization disorder with borderline personality traits at step two, and (3) evaluating her conditions under the Listing of Impairments. Both Ford and Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, have moved for judgment on the pleadings in their favor. D.E. 28, 33.

After reviewing the parties' arguments, the court has determined that ALJ Hill reached the appropriate determination. The court finds that ALJ Hill did not err in evaluating the opinions of from Ford's treating providers. Although ALJ Hill did not find that Ford's somatization disorder with borderline personality traits was a severe impairment at step two, any error in this determination is harmless given that he considered the condition at later steps of the sequential analysis. And the court finds that ALJ Hill properly explained why Ford's conditions did not meet

---

[1] Kijakazi became Acting Commissioner of Social Security on July 9, 2021, replacing Andrew Saul.

or equal the Listing of Impairments. The court thus denies Ford's motion, grants Kijakazi's motion, and affirms the Acting Commissioner's determination.[2]

## I. Background

In December 2016, Ford applied for disability benefits, alleging a disability that began in February 2011. After the Social Security Administration denied her claim at the initial level and upon reconsideration, Ford appeared before ALJ Hill for a hearing to determine whether she was entitled to benefits. ALJ Hill determined Ford had no right to benefits because she was not disabled. Tr. at 776–785.

ALJ Hill found that Ford's major depressive disorder, generalized anxiety disorder, morbid obesity, migraines, fibromyalgia, carpal tunnel syndrome, chronic fatigue syndrome, Ehlers-Danlos Hypermobility, myalgia/myositis related to Ehlers-Danlos, and methylenetetrahydrofolate reductase ("MTHFR") gene mutation were severe impairments. Tr. at 778. ALJ Hill also found that Ford's impairments, either alone or in combination, did not meet or equal a Listing impairment. Tr. at 779.

ALJ Hill then determined that Ford had the RFC to perform sedentary work with other limitations. Tr. at 780. She can occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds. *Id.* Ford can occasionally kneel, crouch, crawl, balance, and stoop. *Id.* And she can frequently, but not continuously, handle and finger with both hands. *Id.*

Ford must avoid concentrated exposure to respiratory irritants such as fumes, odors, dust, gases, and poorly ventilated areas. *Id.* And she must avoid all exposure to hazardous machinery and unprotected heights. *Id.*

---

[2] The parties have consented to jurisdiction by a United States Magistrate Judge. 28 U.S.C. § 636(c). D.E. 22.

Ford can perform simple, routine tasks and maintain attention, concentration, persistence, and pace to stay on task for two-hour periods during a normal workday, as required to perform such tasks. *Id.* She requires a low stress setting, defined as work that is not production pace or quota based but a goal-oriented job primarily dealing with things rather than people. *Id.* Because of her migraines, Ford is allotted one absence per month, and can be off task up to 5% of the workday. *Id.*

ALJ Hill concluded that Ford had could not perform her past relevant work as human resource staff, tire service supervisor, office manager, or store laborer. Tr. at 783. But considering her age, education, work experience, and RFC, ALJ Hill found that jobs existed in significant numbers in the national economy that Ford could perform. Tr. at 783–84. These jobs include document preparer, dresser, and weight tester. *Id.* Thus, ALJ Hill found that Ford was not disabled. Tr. at 784.

After unsuccessfully seeking review by the Appeals Council, Ford commenced this action in June 2020. D.E. 1.

## II.    Analysis

### A.    Standard for Review of the Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to determining whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively* v. *Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). The

3

court must affirm the Commissioner's decision if it is supported by substantial evidence. *Smith* v. *Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B.    Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson* v. *Barnhart*, 434 F.3d 650 (4th Cir. 2005). The ALJ must consider the factors in order. At step one, if the claimant is engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is presumed. But if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C.    Medical Background

Ford has a long history of headaches. Tr. at 781. A December 2016 MRI showed normal flow signal and no intracranial aneurysm, malformation, or focal stenosis. *Id.*

Ford's treating providers discovered that she is heterozygous positive for the A1298C gene and the C667T gene predisposes her to migraines, depression, obsessive compulsive disorder, and attention deficit disorder. *Id.* Providers assessed Ford with multiple myalgias secondary to Ehlers-

4

Danlos Hypermobility, which causes chronic joint laxity and dislocation. Tr. at 781, 824, 826–27. Methylated B12 and folic acid were beneficial to Ford, and she reported feeling more in charge and less foggy in her thought process. Tr. at 781–82.

Ford has a history of fibromyalgia, but was not treating with a rheumatologist as of 2015. Tr. at 782. She reported "fibro fog" and somatic symptoms including chronic fatigue, carpal tunnel, restless leg syndrome, and chronic nausea. *Id.* Neurological examinations yielded unremarkable results. *Id.*

Providers diagnosed Ford with major depressive disorder and generalized anxiety disorder. *Id.* Mental status examinations from Saint Thomas Family Health Center reveal good insight and judgment, normal mood and affect, and normal memory. *Id.* And Ford denied depressive, anxious, or psychotic symptoms. *Id.* Records from Trinity Wellness Center show improvement in Ford's symptoms with medications and cognitive behavioral therapy. *Id.*

In September 2016, Kimberly Adamas, Psy.D., ABPP-CN, concluded that Ford met the criteria for major depressive disorder and somatization disorder with borderline personality traits. *Id.* Because of these conditions, Ford has negative thoughts, somatization, and hopelessness that interferes with goal-setting. *Id.* Dr. Adams remarked that Ford's current medication did not appear to control her depression symptoms. *Id.* She recommended that Ford continue psychotherapy to improve her coping skills and self-esteem. *Id.*

Two months later, a neuropsychology questionnaire noted multiple mental health symptoms. Tr. at 1204. And Ford's Zung Self-Rating Depression score of 66 reflected moderate to severe depression. Tr. at 1212.

Dr. Frank Snyder, a treating provider with Wilmington Internal Medicine, issued a statement in June 2017 finding that Ford was totally disabled. *Id.* Patrick McConnell, PA-C, Ford's

treating provider at Landfall Family Medicine, completed a form from Erie Insurance in December 2016. Tr. at 1802–03. Dr. Snyder completed a similar form in April 2018. Tr. at 1851–52. Both concluded she was disabled and could not work in her past jobs or other positions. *Id.* And both found that Ford could lift no more than ten pounds, stand or walk for less than three hours, and sit for six hours in an eight-hour workday. *Id.*

Dr. Snyder provided another letter two months later. Tr. at 1798–1800. He stated that Ford's gene mutation can cause depression and attention deficit disorder. *Id.* She appeared resistant to medication, was sensitive to emotion, and could be easily confused or overwhelmed. *Id.* The gene mutations, coupled with her Ehlers-Danlos Hypermobility, severely compromised Ford's ability to perform satisfactorily in a work setting. *Id.*

At the hearing, Ford testified that when she last worked, she had trouble recognizing icons on her computer screen. Tr. at 817. Within a month, she could no longer turn on her computer. *Id.*

Ford described the dislocations and neuropathy in her lower extremities. She had burning, stabbing pain, a pins and needles sensation, and her toes would come out of place. Tr. at 823. Ford has trouble standing and walking, and she experiences pain. Tr. at 1204. She reported frequent falls, occurring up to twice weekly. Tr. at 835.

Ford also experienced neuropathy, pins and needles sensation, and some numbness in her hands. Tr. at 825. She wore wrist braces at night to help her carpal tunnel syndrome. *Id.* Ford has trouble lifting items and her fingers become dislocated. Tr. at 826. Similarly, Ford's lower extremities have neuropathic symptoms with pain and diminished sensation. Tr. at 1351. Her podiatrist assessed tarsal tunnel syndrome and tendonitis. *Id.*

Ford stated that she has migraines five or six times a week. Tr. at 833. She requires a quiet, dark place because she experiences light and noise sensitivity. Tr. at 844.

6

**D**.     **Medical Opinion Evidence**

Ford argues that ALJ Hill erred considering the opinions of her treating providers. Kijakazi asserts that ALJ Hill gave great weight to Dr. Snyder's findings, which the RFC reflects. And she claims that any error in failing to weigh McConnell's opinion is harmless because his assessment matched Dr. Snyder's conclusions. The undersigned finds no error in ALJ Hill's evaluation of the medical opinion evidence.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* §§ 404.1527(c), 416.927(c); *Nicholson* v. *Comm'r of Soc. Sec.,* 600 F. Supp. 2d 740, 752 (W.D. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

Opinions of treating physicians and psychologists on the nature and severity of impairments must be given controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig* v. *Chater*, 76 F.3d 585, 590 (4th Cir. 1996); *Ward* v. *Chater*, 924 F. Supp. 53, 55–56 (W.D. Va. 1996); SSR 96–2p, 1996 WL 374188 (July 2, 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In determining the weight to be ascribed to an opinion, the ALJ should consider the length and nature of the treating relationship, the supportability of the opinions, their

consistency with the record, any specialization of the source of the opinions, and other factors that tend to support or contradict the opinions. 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore* v. *Colvin*, No. 0:11–2865-TMC, 2013 WL 837643, at *2 (D.S.C. Mar. 6, 2013) ("In doing so [i.e., giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

Opinions from "other sources" who do not qualify as "acceptable medical sources" cannot be given controlling weight, but are evaluated under the same factors used to weigh the assessments of physicians and psychologists. SSR 06–3p, 2006 WL 2329939, at *2, 4 (Aug. 9, 2006); *see also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (identifying "other sources"). An ALJ must explain the weight given opinions of "other sources" and the reasons for the weight given. SSR 06–3p, 2006 WL 2329939, at *6; *Napier* v. *Astrue*, No. TJS-12–1096, 2013 WL 1856469, at *2 (D. Md. May 1, 2013).

Similarly, evaluations from sources who neither treat nor examine a claimant are considered under the same basic standards as evaluations of medical opinions from treating providers whose assessments are not given controlling weight. *See* 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e). The ALJ must explain the weight given to these opinions. *Id.; Casey* v. *Colvin*, No. 4:14-CV-00004, 2015 WL 1810173, at *3 (W.D. Va. Mar. 12, 2015), *adopted by*, 2015 WL 1810173, at *1 (Apr. 21, 2015); *Napier*, 2013 WL 1856469, at *2.

8

More weight is generally given to the opinion of a treating source over the opinion of a non-treating examining source. Similarly, the opinion of an examining source is typically given more weight than the opinion of a non-examining source. *See* 20 C.F.R. §§ 404.1527(c)(1), (2), 416.927(c)(1), (2). Under appropriate circumstances, however, the opinions of a non-treating examining source or a non-examining source may be given more weight than those of a treating source. *See, e.g.*, *Mastro* v. *Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (affirming ALJ's attribution of greater weight to the opinions of a non-treating examining physician than to those of a treating physician); SSR 96–6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Opinions from medical sources on issues reserved to the Commissioner, such as disability, deserve no special weight. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96–5p, 1996 WL 374183, at *2, 5 (July 2, 1996). But the ALJ must still evaluate these opinions and give them appropriate weight. SSR 96–5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator must evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

"In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore* v. *Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted). But "[i]n some cases, the failure of an ALJ to explicitly state the weight given to a medical opinion constitutes harmless error, so long as the weight given to the opinion is discernible

9

from the decision and any grounds for discounting it are reasonably articulated." *Bryant* v. *Colvin*, No. 5:11-CV-648-D, 2013 WL 3455736, at *5 (E.D.N.C. July 9, 2013) (internal quotation marks and citations omitted).

### 1. Dr. Snyder

Dr. Snyder, Ford's treating provider, issued a statement in June 2017 finding that Ford was totally disabled. *Id.* He filled out a disability form for Erie Insurance in April 2018. Tr. at 1851–52. Her diagnoses included chronic pain, migraines, memory impairment, and fibromyalgia. Tr. at 1851. Ford's short-term memory had mild impairment, but she had no problems with long-term memory or judgment. *Id.*

Dr. Snyder also determined that she could stand or walk for three hours and sit for six hours. *Id.* And Ford had postural limitations and could lift and carry no more than ten pounds. *Id.*

Dr. Snyder remarked that Ford had these limitations since 2011 and her prognosis was poor. *Id.* He concluded that Ford was disabled and could not work in her past jobs or other positions. *Id.*

Two months later, Dr. Snyder provided another letter remarking that Ford's gene mutation can cause depression and attention deficit disorder. Tr. at 1798–1800. Her condition appeared resistant to medication, she was sensitive to emotions, and was easily confused or overwhelmed. *Id.* Ford's conditions severely compromised her ability to perform satisfactorily in a work setting. *Id.*

ALJ Hill specifically discussed Dr. Snyder's June 2017 and April 2018 findings. Tr. at 782. He noted that the Dr. Snyder's June 2017 conclusion of total disability was made after the relevant period of disability. Tr. at 782, 1497. And his opinion of total disability was not a medical opinion

but and administrative finding reserved to the Commissioner. *Id.* So it deserved no special weight. *Id*.

### a. June 2017 Statement

In considering the June 2017 evidence, ALJ Hill referenced Exhibit B15F, which consists of 108 pages of treatment notes from Wilmington Internal Medicine. Tr. at 782. Ford argues that it is unclear which part of Dr. Snyder's opinion he rejected. The court disagrees.

The June 2017 treatment record is six pages. Tr. at 1493–98. In it, Dr. Snyder states that Ford's condition is improving but she remains totally disabled. Tr. at 1497. It is clear that this is the portion of the record ALJ Hill referenced in determining to assign no weight to it. Ford identifies no other findings by Dr. Snyder in Exhibit B15F that ALJ Hill ignored. So the court cannot find any error in his consideration of this evidence.

### b. April 2018 Statement

ALJ Hill found that Dr. Snyder's April 2018 assessment was consistent with the overall medical evidence. Tr. at 782–83. So he assigned it great weight. *Id.*

And the RFC reflects that ALJ Hill incorporated several of Dr. Snyder's findings. Limiting Ford to sedentary work matches Dr. Snyder's determinations about Ford's ability to walk, stand, sit, lift, and carry. The RFC also includes restrictions on Ford's climbing, bending, stooping, pushing, and pulling, which track Dr. Snyder's findings. And the mental limitations account for the short-term memory limitations Dr. Snyder found.

Given the great weight ALJ Hill assigned to Dr. Snyder's April 2018 findings, which the RFC adopts, the court cannot find error in his consideration of this medical opinion. *See Tanner* v. *Comm'r. of Soc. Sec.*, 602 F. App'x. 95, 100–01 (4th Cir. 2015) (ALJ's failure to weigh a medical opinion was harmless error because RFC assessment reflected the recommendations

provided in the unaddressed opinion, the ALJ's discussion suggested that the ALJ had considered the unaddressed statement, and it was highly unlikely that a remand would change the outcome); *Sineath* v. *Colvin*, No. 1:16-CV-28, 2016 WL 4224051, at *6–7 (M.D.N.C. Aug. 9, 2016), *adopted*, (M.D.N.C. Sept. 13, 2016) (physician's findings and opinions were clearly considered by the ALJ and did not suggest greater limitations than the those incorporated in the RFC).

### c.     June 2018 Statement

Ford argues ALJ Hill erred in failing to discuss and weigh Dr. Snyder's June 2018 letter and other statements of disability. The letter detailed Ford's diagnoses and related symptoms. Tr. at 1798–1800. It notes that she can be sensitive to emotions and prone to anxiety and depression. *Id.* Dr. Snyder remarked that Ford's conditions severely compromise her ability to achieve satisfactory results in the workplace. *Id.* So "[i]f anyone deserved disability" it is Ford. *Id.*

Yet this statement offers little detail on Ford's impairments and their effects, and it makes no findings about her functional abilities. Instead, it opines only about the issue of disability, which is the Commissioner's to resolve.

Although Hill challenges the position that conclusions on disability are for the Commissioner, not medical providers, to render, her argument lacks a persuasive legal foundation. The Regulations and case law affirm the Commissioner's authority to decide the ultimate issue of disability. *See* 20 C.F.R. § 404.1572(d) (The Commissioner makes the determination of whether a claimant meets the statutory definition of disability and statements of disability by medical sources do not mean a claimant will be found disabled). For these reasons, other statements of disability deserve no special weight, consistent with ALJ Hill's consideration of Dr. Snyder's June 2017 statement of total disability.

12

Finding no error in ALJ Hill's consideration of Dr. Snyder's opinions, the court rejects Ford's argument on this issue.

## 2. McConnell

Ford also claims that ALJ Hill erred by failing to weigh McConnell's assessment. Like Dr. Snyder, McConnell completed a disability form for Erie Insurance in December 2016. Its assessment of Ford's functioning mirrors those Dr. Snyder made. Tr. at 1802–03, 1851–52. Both providers found exertional, postural, and mental limitations. As noted above, the RFC for sedentary work with postural and mental restrictions endorses the restrictions these providers found.

So even if ALJ Hill erred in failing to accord specific evidentiary weight to McConnell's statement, it is harmless because Ford can establish no prejudice to her claim. As with Dr. Snyder's April 2018 assessment, McConnell's statement found limitations which ALJ Hill included in the RFC determination. And Ford has identified no limitation that McConnell found which the RFC does not reflect. Thus, even if ALJ Hill assigned it great weight, the practical effect would not change the RFC determination because it echoes the limitations McConnell assessed.

The court thus finds no error in ALJ Hill's consideration of McConnell's assessment. So it rejects Ford's argument on this issue.

## E. Impairment Severity

Ford next argues that ALJ Hill erred in failing to find that her somatization disorder with borderline personality traits was a severe impairment at step two. The Acting Commissioner contends, and the undersigned agrees, that any error in identifying this condition as a severe impairment is harmless because ALJ Hill considered it, along with her other impairments, both severe and non-severe, at the later steps of the sequential analysis.

As noted above, at the second step of the sequential evaluation process, the ALJ determines whether the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is considered "severe" if it significantly limits a claimant's ability to do work-related activities. 20 C.F.R. § 404.1522(a); SSR 96–3p, 1996 WL 374181, at *1. "[A]n impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do physical or mental basic work activities." SSR 96–3p, 1996 WL 374181, at *1 (citing SSR 85–28, 1985 WL 56856).

Basic work activities include physical capacities as well as those for mental abilities. 20 C.F.R. § 404.1522(b). Basic mental work activities include understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. *Id.*

A plaintiff bears the burden of proving severity at step two. *Hunter* v. *Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). This is done by producing medical evidence establishing the condition and its effect on the claimant's ability to work. *Williamson* v. *Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003).

If the ALJ determines that the claimant does not have a severe impairment or combination of impairments, she finds that the claimant is not disabled and the sequential process ends at step two. But if the claimant has at least one severe impairment, the process continues. "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen* v. *Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen* v. *Yuckert*, 482 U.S. 137, 153–54 (1987)); *see also Felton-Miller* v. *Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) ("Step two of the sequential evaluation is a threshold question with a de minimis severity requirement.").

14

An ALJ's omission of a severe impairment at step two does not, without more, require remand. "As long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." *McClain* v. *Colvin*, No. 1:12-CV-1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014); *Thomas* v. *Comm'r, Soc. Sec. Admin.*, No. SAG–11–3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (if the ALJ goes on to discuss and consider the non-severe impairment at later steps, there is no prejudice to the claimant).

In considering the alleged oversight at step two, the court also considers ALJ Hill's explanation and discussion throughout the sequential analysis. ALJ Hill found several conditions, including mental impairments, were severe impairments at step two. Tr. at 778. Yet somatization disorder with borderline personality traits was not among them.

But a review of ALJ Hill's decision reflects that he considered all her symptoms, including those associated with her somatization disorder, in both the medical records and her testimony. ALJ Hill noted that Ford is forgetful and needs reminders, but she did not have a cognitive disorder. Tr. at 779. She had little social limitation, as she talked on the phone, shopped in stores, and attended support groups. *Id.* Although Ford claimed she had problems with attention and concentration, she could drive, shop online, and go out without assistance. Tr. at 780. And she could care for herself, prepare simple meals, care for her son, and run errands. *Id.*

The decision remarked on Ford's long history of headaches. Tr. at 781. Her mutated gene conditions responded well to medication treatment, with Ford reporting feeling more in charge and less foggy. Tr. at 781–82.

15

ALJ Hill also referenced her fibromyalgia, and noted that Ford did not see a rheumatologist. Tr. at 782. She reported fogginess and associated somatic symptoms, including chronic fatigue, nausea, carpal tunnel, and restless legs. *Id.*

ALJ Hill also discussed her depression and anxiety. *Id.* Mental status examination found generally unremarkable results, and Ford denied any manic, depressive, anxious, or psychotic symptoms. *Id.* Ford's mental health symptoms improved with therapy and medications. *Id.*

ALJ Hill addressed Dr. Adams's evaluation. *Id.* Because of her major depressive disorder and somatization disorder with borderline personality traits, Hill experienced negative thoughts and somatization, and hopelessness. *Id.* These symptoms interfered with Hill's ability to set goals. *Id.* But Dr. Adams recommended that Hill continue therapy to process her feelings, improve her self-esteem, and develop coping skills. Tr. at 782–83.

ALJ Hill also reviewed Ford's testimony that her limited abilities to sit, stand, walk, lift and hold objects prevented her from working. Tr. at 781. And Ford claimed that her headaches, depression, anxiety, and panic attacks precluded work. *Id.*

ALJ Hill's RFC determination accounts for her mental health limitations. For instance, she is limited to simple, routine tasks and can maintain attention, concentration, persistence, and pace to stay on-task for two-hour periods. Tr. at 780. The RFC further limits Hill to work in a low-stress setting and permits her one absence per month. Tr. at 780–81. And it makes an allotment for her to be off-task for five percent of the workday. Tr. at 781. These restrictions account for Ford's limitations in understanding, remembering, and attention and concentration, including the "fogginess" she reported experiencing.

The mere presence of a condition or ailment is not enough to show a severe impairment or disability. And Ford has identified no symptom or limitation stemming from her mental conditions

that ALJ Hill disregarded. So it is not apparent that any omission in identifying somatization disorder with borderline personality traits as a severe impairment at step two had any effect on the later steps of the sequential analysis.

Although Ford cites Dr. Adams's identification of this condition to challenge the step two finding, the RFC addresses the well-supported limitations associated with of all her conditions. So the court finds no error in this analysis.

Even if there were an error at step two, it is harmless, because ALJ Hill thoroughly considered Ford's mental health limitations and addressed them throughout the decision. Ford has not shown how any error in the identification of this condition as a severe impairment at step two prejudiced her. So the court finds this issue presents no basis for remand.

## F.    12.00 Listings

Ford contends that ALJ Hill erred by finding that her impairments did not meet or medically equal the requirements of Listing 12.07 (somatic disorder) or 12.08 (personality disorder). Kijakazi maintains that the evidentiary record supports ALJ Hill's finding. The court finds that ALJ Hill properly analyzed Ford's impairments at step three because the record fails to show the presence of all the Listing criteria.

### 1.  Overview of Listing of Impairments

The Listing of Impairments details impairments that are "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairments meet all the criteria of a particular listing, *id.* § 416.925(c)(3), or are medically equivalent to a listing, *id.* § 416.926, the claimant is considered disabled, *id.* § 416.920(d). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard [for disability more generally]. The listings define impairments that

would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan* v. *Zebley*, 493 U.S. 521, 532 (1990); *see also Bowen* v. *Yuckert*, 482 U.S. 137, 153 (1987) (stating that the listings are designed to weed out only those claimants "whose medical impairments are so severe that it is likely they would be disabled regardless of their vocational background").

The claimant has the burden of proving that his or her impairments meet or medically equal a listed impairment. *Hall* v. *Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *see also Hancock* v. *Astrue*, 667 F.3d 470, 476 (4th Cir. 2012). As a result, a claimant must present medical findings equal in severity to all the criteria for that listing: "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530–31; *see also* 20 C.F.R. § 416.925(c)(3). A diagnosis of a particular condition, by itself, cannot establish that a claimant satisfies a listing's criteria. 20 C.F.R. § 416.925(d); *see also Mecimore* v. *Astrue*, No. 5:10-CV-64, 2010 WL 7281096, at *5 (W.D.N.C. Dec. 10, 2010) ("Diagnosis of a particular condition or recognition of certain symptoms do not establish disability.").

An ALJ need not explicitly identify and discuss every possible listing that may apply to a particular claimant. Instead, the ALJ must provide a coherent basis for his step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. *Radford* v. *Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). When the evidence exists but is rejected without discussion, the "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Id.* (citing *Cook* v. *Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986)). In reviewing the ALJ's analysis, it is possible that even "[a] cursory explanation" at step three may prove "satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant

18

evidence of record and there is substantial evidence to support the conclusion." *Meador* v. *Colvin*, No. 7:13-CV-214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing *Smith* v. *Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011)). Still, the ALJ's decision must include "a sufficient discussion of the evidence and explanation of its reasoning such that meaningful judicial review is possible." *Id*.

### 2. Listing 12.07

In her 2016 examination of Ford, Dr. Adams assessed somatization disorder. This condition is a mental disorder characterized by presentation of a complicated medical history and of physical symptoms referring to a variety of organ systems, but without a detectable or known organic basis. *Somatization disorder*, Stedman's Medical Dictionary 260640 (2014).

Although this diagnosis was in the record, ALJ Hill did not consider it at step three. Listing 12.07 addresses somatic symptom and related disorders. 20 C.F.R., Pt. 404, Subpt. P., App'x 1, § 12.07.

To meet Listing 12.07 the claimant must establish that an impairment satisfies two sets of criteria:

A.  Medical documentation of one or more of the following:

    1. Symptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder;
    2. One or more somatic symptoms that are distressing, with excessive thoughts, feelings, or behaviors related to the symptoms; or
    3. Preoccupation with having or acquiring a serious illness without significant symptoms present.

AND

B.  Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

1. Understand, remember, or apply information.
2. Interact with others.
3. Concentrate, persist, or maintain pace.
4. Adapt or manage oneself.

*Id.*

As noted above, a diagnosis of a particular condition, by itself, does not establish that a Listing's criteria are satisfied. 20 C.F.R. § 416.925(d). So Dr. Adams's assessment, without more, will not fulfill Ford's burden at step three.

Ford makes no argument about which of the Paragraph A criteria her somatization disorder meets. The evidence may establish that her headaches, carpal tunnel, and restless leg syndrome are manifestations of her somatic disorder. And the record shows that Ford experienced negative thoughts, hopelessness, problems with self-esteem and coping skills, and trouble setting goals. But it is unclear whether her somatic symptoms caused these mental health problems or whether they stem from her other impairments.

Yet the court need not resolve whether Ford satisfies the Paragraph A because, as discussed below, she cannot meet the Paragraph B criteria. Thus, she cannot establish disability under Listing 12.07.

The Paragraph B criteria for Listing 12.07 are identical to those for Listings 12.04 and 12.06. And ALJ Hill discussed the Paragraph B criteria when he analyzed Listings 12.04 and 12.06 at step three of his determination. Tr. at 779–80. He found that Ford had no limitation in adapting or managing herself, mild limitation in interacting with others, and moderate limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. *Id.*

20

Ford offers no evidence that ALJ Hill erred in examining the Paragraph B criteria for Listings 12.04 and 12.06 findings. So ALJ Hill's Paragraph B findings foreclose Ford's qualification as disabled under identical criteria for Listing 12.07.

In sum, although there may be evidence Ford satisfied the first factor of Listing 12.07 under Paragraph A, she cannot establish the necessary Paragraph B criteria. So there was no error by ALJ Hill in failing to consider this Listing or find Ford disabled under it. *See Smith* v. *Berryhill*, No. 7:17-CV-50-RJ, 2018 WL 1014167, at *4 (E.D.N.C. Feb. 22, 2018) (no merit to plaintiff's argument that ALJ erred in overlooking listing 12.07 where ALJ found plaintiff did not meet Paragraph B of Listings 12.04 and 12.06); *Norwood* v. *Astrue*, No. 3:11-CV-398, 2012 WL 4450887, at *7 (E.D. Tenn. Aug. 31, 2012) (any error in not specifically addressing Listing 12.07 was harmless where ALJ found that the plaintiff did not meet the Paragraph B criteria of Listings 12.04 and 12.06 and plaintiff identified no evidence challenging that finding), *adopted*, 2012 WL 4442667 (E.D. Tenn. Sept. 25, 2012).

The court thus rejects Ford's argument on this issue.

### 3. Listing 12.08[3]

To meet Listing 12.08, the claimant must again show that an impairment satisfies two sets of criteria. First she must show "medical documentation of a pervasive pattern" of one of the following:

1.    Distrust and suspiciousness of others;
2.    Detachment from social relationships;
3.    Disregard for and violation of the rights of others;
4.    Instability of interpersonal relationships;
5.    Excessive emotionality and attention seeking;

It does not appear that any provider diagnosed Ford with a personality disorder. Dr. Adams noted that Ford had borderline personality traits. Tr. at 1360. But Dr. Adams also remarked that there was some evidence of exaggeration on personality testing. *Id*.

6. Feelings of inadequacy;
7. Excessive need to be taken care of;
8. Preoccupation with perfectionism and orderliness; or
9. Recurrent, impulsive, aggressive behavioral outbursts.

*Id*. § 12.08A. If she makes that showing, a claimant then must also establish that she has one extreme or two marked limitations in the Paragraph B functional areas. *Id.* § 12.08B.

As with Listing 12.07, Ford has not identified which of the Paragraph A criteria she meets for Listing 12.08. The evidence shows that she suffered with self-esteem, which could correlate to "feelings of inadequacy." But it is unclear whether the record shows that this problem was "pervasive" as the Listing requires.

The Acting Commissioner again contends that ALJ Hill did not have to discuss this Listing because Ford cannot establish all the criteria of this Listing given ALJ Hill's finding that she did not met the Paragraph B criteria. Tr. at 779. And Ford does not challenge ALJ Hill's Paragraph B findings.

For the reasons discussed above, even if Ford could establish the criteria of Paragraph A, she has not met her burden of establishing the Paragraph B factors. *See Smith,* 2018 WL 1014167, at \*4; *Norwood*, 2012 WL 4450887, at \*7. So there was no error by ALJ Hill in failing to consider Listing 12.08 or find Ford disabled under it.

The court thus rejects Ford's argument on this issue.

## III.    Conclusion

For all these reasons, the court denies Ford's Motion for Judgment on the Pleadings (D.E. 28), grants Kijakazi's Motion for Judgment on the Pleadings (D.E. 33), and affirms the Acting Commissioner's determination.

This action is dismissed. The Clerk shall close this case.

22

Dated: September 7, 2021

_____
Robert T. Numbers, II
United States Magistrate Judge